UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――― x
EFFIONG EYO,

                *Plaintiff*,

- against -

DOCGO INC.; RAPID RELIABLE CARE NY BY
DOCGO, LLC; and RAPID RELIABLE CARE BY
DOCGO, LLC,

                *Defendants*.
―――――――――――――――――――――――――― x

**RULE 23 CLASS ACTION COMPLAINT**

Plaintiff Effiong Eyo ("Plaintiff"), by and through his attorneys, complains against Defendants DocGo Inc., Rapid Reliable Care NY by DocGo, LLC, and Rapid Reliable Care by DocGo, LLC f/k/a Rapid Reliable Testing (collectively "DocGo" or "Defendants") as follows:

1. Defendants operated facilities providing shelter and essential services to asylum seekers under a contract with the New York City Department of Housing Preservation and Development (HPD). A recent audit by the New York City Comptroller uncovered extensive mismanagement by Defendants, including nearly $11 million in improper payments, unauthorized subcontracting, inadequate staffing in violation of contractual obligations, and widespread substandard housing conditions. These systemic failures directly contributed to abrupt facility closures and resulted in the unlawful termination of approximately 200+ employees, including Plaintiff, without the required WARN notice periods. Defendants' claimed justification of "unforeseeable business circumstances" is contradicted by audit findings, indicating their advance knowledge of operational deficiencies and potential closures. Defendants' actions have caused significant financial and emotional hardship to Plaintiff and similarly situated employees. Plaintiff seeks damages under both federal and New York WARN

Acts, including wages, benefits, and attorneys' fees. 29 U.S.C. § 2101 et seq., and N.Y. Lab. Law § 860 et seq.

2. On or about February 27, 2025, Defendants notified Plaintiff and approximately 60+ other employees that they would be terminated effective March 16, 2025, due to the closure of multiple migrant shelter facilities, including the facility at 47 Hall Street, Brooklyn, New York (the "Hall Street Facility") where Plaintiff worked, as well as facilities at 440 W 57th Street, Brooklyn, NY 10019 (the "Watson Facility"), 371 7th Ave, New York, NY 10001 (the "Stewart Facility"), and 220 W 42nd St, New York, NY 10036 (the "Candler Facility") (collectively, the "Facilities").

3. Despite claiming "unforeseeable business circumstances," Defendants failed to provide Plaintiff and other similarly situated employees with 90 days' advance written notice of their terminations as required by the NY WARN Act, and 60 days' advance written notice as required by the federal WARN Act.

4. Plaintiff seeks to recover 60 days' wages and benefits pursuant to the federal WARN Act, and 90 days' wages and benefits pursuant to the NY WARN Act, along with attorneys' fees and costs.

5. Defendants significantly mismanaged their obligations under the HPD contract, including failing to ensure adequate staffing levels. The Comptroller's audit specifically found that Defendants did not provide contractually required numbers of caseworkers and social workers at their facilities, jeopardizing the health and safety of asylum seekers, and ultimately destabilizing the Defendants' contractual relationship with HPD.

6. Defendants engaged in improper and unauthorized subcontracting, allocating approximately 67% of $11 million in payments made by HPD during May and June 2023 to

subcontractors who had not been pre-approved as required under the HPD contract. This mismanagement directly led to substantial contract violations and contributed to the sudden loss of Defendants' contracts with HPD.

7. Defendants provided substandard housing conditions at multiple shelter facilities, violating their obligations under the HPD contract. An inspection by the Comptroller identified deficiencies in approximately 80% of rooms reviewed, including missing essential amenities and hazardous conditions such as mold and water damage, further evidencing Defendants' widespread neglect and mismanagement.

8. Defendants' retroactive authorization of over $2 million in additional services—more than eight months after services were performed—demonstrates Defendants' improper financial and operational controls and supports the conclusion that the alleged "unforeseeable" termination was in fact the result of foreseeable mismanagement.

9. Defendants' claim of "unforeseeable business circumstances" lacks credibility in light of their awareness of ongoing operational failures and potential risks to contract renewal highlighted by the Comptroller's audit. Defendants knew or should have reasonably known of the potential consequences of their misconduct, yet deliberately or recklessly failed to provide legally required WARN notices to Plaintiff and other similarly situated employees.

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district, and Defendants

conducted business within this district.

13. Plaintiff Effiong Eyo is an individual residing in Queens, New York. Plaintiff was employed by Defendants at their facility located at 47 Hall Street, Brooklyn, New York until his termination on March 16, 2025.

14. Defendant DocGo Inc. is a foreign business corporation organized under the laws of Delaware with its principal place of business at 685 Third Avenue, Floor 9, New York, NY 10017. DocGo Inc. is registered with the New York State Department of State, Division of Corporations, with DOS ID 6766390. DocGo Inc. was formed on August 11, 2020, and registered to do business in New York State on March 14, 2023.

15. Defendant Rapid Reliable Care NY by DocGo, LLC is a domestic limited liability company organized under the laws of New York with its principal place of business at 685 Third Avenue, Floor 9, New York, NY 10017. Rapid Reliable Care NY by DocGo, LLC is registered with the New York State Department of State, Division of Corporations, with DOS ID 5747037. Rapid Reliable Care NY by DocGo, LLC was formed on May 6, 2020.

16. Defendant Rapid Reliable Care by DocGo, LLC f/k/a Rapid Reliable Testing is a foreign limited liability company with its principal place of business at 685 Third Avenue, Floor 9, New York, NY 10017. Rapid Reliable Care by DocGo, LLC is registered with the New York State Department of State, Division of Corporations, with DOS ID 5827623. Rapid Reliable Care by DocGo, LLC was registered to do business in New York State on September 3, 2020.

17. At all relevant times, Defendants operated as a single, integrated enterprise and/or joint employers with respect to Plaintiff and other employees at the Facility.

18. Defendants constituted a 'single employer' of the Plaintiff and other similarly situated employees under the WARN Act in that, among other things: (a) The Defendants shared

common ownership; (b) The Defendants shared common officers and directors; (c) All Defendants exercised de facto control over the labor practices governing the Plaintiff and similarly situated employees, including the decision to order the mass layoff at the Facility; (d) There was a unity of personnel policies emanating from a common source between Defendants; and (e) There was a dependency of operations between Defendants.

19. At all relevant times, Defendants shared common ownership, management, and control. Upon information and belief, DocGo Inc. is the parent company of both Rapid Reliable Care NY by DocGo, LLC and Rapid Reliable Care by DocGo, LLC.

20. At all relevant times, Defendants maintained centralized control of labor relations, including the hiring, firing, discipline, and payment of employees at the Facility.

21. At all relevant times, Defendants shared administrative functions, including human resources and payroll management for employees at the Facility.

22. At all relevant times, Defendants operated out of the same corporate headquarters located at 685 Third Avenue, Floor 9, New York, NY 10017.

23. At all relevant times, Defendants utilized common branding, marketing, and corporate identity.

24. At all relevant times, Defendants jointly operated the Facility and provided staffing and management services for the Hall Street Humanitarian Emergency Response and Relief Center located at 47 Hall Street, Brooklyn, NY 11205.

25. Plaintiff was employed by Defendants as at Defendants' Hall Street Humanitarian Emergency Response and Relief Center located at 47 Hall Street, Brooklyn, NY 11205.

26. Plaintiff began his employment with Defendants more than two years ago and worked continuously until his termination effective March 16, 2025.

27. Plaintiff was a full-time employee earning approximately $30.00 per hour.

28. Plaintiff regularly worked between 39 and 52 hours per week at the Facility.

29. Plaintiff worked exclusively in person at the Hall Street Humanitarian Emergency Response and Relief Center.

30. The Hall Street Humanitarian Emergency Response and Relief Center employed approximately 80+ employees at the time of the layoff notification.

31. Upon information and belief, Defendants employed approximately 200+ employees across all the Facilities at the time of the layoff notification.

32. Defendants operated the Facility pursuant to a contract with NYC Health + Hospitals to provide staffing and management services for the migrant shelter.

33. On or about February 27, 2025, Defendants issued a letter to Plaintiff and approximately 60+ other employees at the Facility notifying them that their employment would terminate effective March 16, 2025.

34. The letter was on Rapid Reliable Care by DocGo, LLC letterhead and signed by Rosemarie Milano, Senior Vice President, People, representing all Defendants.

35. The letter stated that Defendants would no longer be operating at the Hall Street Humanitarian Emergency Response and Relief Center, the Watson Humanitarian Emergency Response and Relief Center, the Stewart Humanitarian Emergency Response and Relief Center, and the Candler Humanitarian Emergency Response and Relief Center "due to unforeseeable business circumstances as a result of site closures as mandated by NYC Health + Hospitals."

36. Upon information and belief, approximately 200+ employees across all Facilities were terminated as a result of the closures.

37. Upon information and belief, approximately 80+ employees at the Facility were

terminated as a result of the closure.

38. Upon information and belief, Defendants employed more than 50 full-time employees in New York State at the time of the mass layoff.

39. Defendants provided only 17 days' advance written notice (from February 27, 2025 to March 16, 2025) of termination to Plaintiff and other affected employees.

40. Defendants failed to provide Plaintiff and other affected employees with 90 days' advance written notice of termination as required by the NY WARN Act.

41. Defendants failed to provide Plaintiff and other affected employees with 60 days' advance written notice of termination as required by the federal WARN Act.

42. In their termination letter, Defendants claimed that the layoffs were due to "unforeseeable business circumstances," which is a potential exception to the notice requirements under both the federal WARN Act and the NY WARN Act.

43. Upon information and belief, Defendants' claim of "unforeseeable business circumstances" is pretextual and does not satisfy the requirements for this exception under either the federal WARN Act or the NY WARN Act.

44. Upon information and belief, Defendants knew or should have known about the potential loss of their contract with NYC Health + Hospitals more than 90 days before the closure of the Facility.

45. Even if some aspects of the closure were unforeseeable, Defendants were still required to give as much notice as practicable under the circumstances, which they failed to do.

46. Upon information and belief, all Defendants were involved in the decision to terminate Plaintiff and other employees at the Facility.

47. Upon information and belief, all Defendants were involved in the operation and

management of the Facility and benefited from the services provided by Plaintiff and other employees.

48. Plaintiff brings this class claim for violation of 29 U.S.C. § 2101 et seq. on his own behalf and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or reported to any of Defendants' Facilities, including the Hall Street Facility, the Watson Facility, the Stewart Facility, and the Candler Facility, and were terminated without cause on or about March 16, 2025, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants (the 'WARN Class').

49. The persons in the WARN Class identified above ('WARN Class Members') are so numerous that joinder of all members is impracticable. The class includes approximately 200+ employees who were terminated from four separate facilities. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

50. The identity of the members of the class and the recent residence address of each of the WARN Class Members is contained in the books and records, including electronic records, of Defendants.

51. On information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Class Member at the time of his/her termination is contained in the books and records, including electronic records, of the Defendants.

52. Common questions of law and fact exist as to members of the WARN Class, including, but not limited to, the following: (a) whether the members of the WARN Class were

employees of the Defendants who worked at or reported to any of the Facilities; (b) whether Defendants unlawfully terminated the employment of the members of the WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the WARN Act; and (c) whether Defendants unlawfully failed to pay the WARN Class members 60 days wages and benefits as required by the WARN Act.

53. Plaintiff's claims are typical of those of the WARN Class. The Plaintiff, like other WARN Class members, worked at or reported to one of Defendants' Facilities and was terminated without cause during the relevant period, due to the mass layoffs and/or plant closings ordered by Defendants at all four Facilities..

54. Plaintiff will fairly and adequately protect the interests of the WARN Class. The Plaintiff has retained counsel competent and experienced in complex class actions, including the WARN Act and employment litigation.

55. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WARN Class predominate over any questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation."

56. Defendants' failure to provide its employees with advance written notice had a devastating economic impact on Plaintiff and other similarly situated employees. The sudden loss of employment without adequate notice has caused significant financial hardship, including but not limited to loss of income, difficulty securing alternative employment, inability to make timely payments on financial obligations, and emotional distress.

57. Defendants could have, but failed to, notify Plaintiff and other similarly situated employees of their plans well in advance of March 16, 2025. The circumstances surrounding the

closure of the Facility were known or should have been known to Defendants well in advance of the termination date, including the potential non-renewal or early termination of their contract with NYC Health + Hospitals.

58. Defendants chose not to provide timely notice in flagrant disregard for their workforce and the requirements of both the federal and New York WARN Acts. This failure was not the result of unforeseeable business circumstances but rather a calculated decision to withhold information from employees that they had a legal right to receive."

59. Plaintiff and the similarly situated employees suffered an 'Employment loss' as defined in New York Labor Law Section 860-a(2), because they suffered 'an employment termination, other than a discharge for cause, voluntary departure, or retirement' when Defendants closed the Facility.

## FIRST CAUSE OF ACTION

### Violation of Federal WARN Act (29 U.S.C. § 2101 et seq.)

60. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61. At all relevant times, Defendants, individually and collectively, were an "employer" as defined by the WARN Act, 29 U.S.C. § 2101(a)(1).

62. At all relevant times, Defendants constituted a single employer and/or joint employers under the WARN Act.

63. At all relevant times, Plaintiff was an "affected employee" as defined by the WARN Act, 29 U.S.C. § 2101(a)(5).

64. On or about March 16, 2025, Defendants ordered a "plant closing" and/or "mass layoff" as defined by the WARN Act, 29 U.S.C. § 2101(a)(2)-(3).

65. The WARN Act requires employers to provide affected employees with 60 days' advance written notice of their terminations. 29 U.S.C. § 2102(a).

66. Defendants failed to provide Plaintiff and other similarly situated employees with 60 days' advance written notice of their terminations as required by the WARN Act.

67. While the WARN Act provides an exception to the 60-day notice requirement for "unforeseeable business circumstances," 29 U.S.C. § 2102(b)(2)(A), Defendants have not established that this exception applies.

68. Even if the "unforeseeable business circumstances" exception applied, Defendants were still required to "give as much notice as is practicable," 29 U.S.C. § 2102(b)(3), which they failed to do.

69. As a result of Defendants' violation of the WARN Act, Plaintiff and other similarly situated employees are entitled to recover up to 60 days' wages and benefits, pursuant to 29 U.S.C. § 2104(a).

## SECOND CAUSE OF ACTION

### Violation of New York WARN Act (N.Y. Lab. Law § 860 et seq.)

70. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71. At all relevant times, Defendants, individually and collectively, were an "employer" as defined by the NY WARN Act, N.Y. Lab. Law § 860-a(3).

72. At all relevant times, Defendants constituted a single employer and/or joint employers under the NY WARN Act.

73. At all relevant times, Plaintiff was an "affected employee" as defined by the NY WARN Act, N.Y. Lab. Law § 860-a(1).

74. On or about March 16, 2025, Defendants ordered a "plant closing" and/or "mass layoff" as defined by the NY WARN Act, N.Y. Lab. Law § 860-a(5) and (6).

75. The NY WARN Act requires employers to provide affected employees with 90 days' advance written notice of their terminations. N.Y. Lab. Law § 860-b(1).

76. Defendants failed to provide Plaintiff and other similarly situated employees with 90 days' advance written notice of their terminations as required by the NY WARN Act.

77. While the NY WARN Act provides an exception to the 90-day notice requirement for "unforeseeable business circumstances," N.Y. Lab. Law § 860-c(1)(b), Defendants have not established that this exception applies.

78. Even if the "unforeseeable business circumstances" exception applied, Defendants were still required to "give as much notice as is practicable," N.Y. Lab. Law § 860-c(2), which they failed to do.

79. As a result of Defendants' violation of the NY WARN Act, Plaintiff and other similarly situated employees are entitled to recover up to 90 days' wages and benefits, pursuant to N.Y. Lab. Law § 860-g(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all other similarly situated persons, demands judgment against Defendants as follows:

a. An award of damages equal to 60 days' wages and benefits for which Defendants are liable pursuant to 29 U.S.C. § 2104(a);

b. An award of damages equal to 90 days' wages and benefits for which Defendants are

liable pursuant to N.Y. Lab. Law § 860-g(1);

    c. Prejudgment interest as allowed by law;

    d. Reasonable attorneys' fees and costs incurred in prosecuting this action, as authorized by 29 U.S.C. § 2104(a)(6) and N.Y. Lab. Law § 860-g(3); and

    e. Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
      March 13, 2025

**LAW OFFICE OF MOHAMMED GANGAT**

By: _____
Mohammed Gangat, Esq.
675 Third Avenue, Suite 1810
New York, New York
(718) 669-0714
mgangat@gangatllc.com
*Attorneys for Plaintiff*